Filed 3/22/13  Torbett v. Pinkerton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GLENN TORBETT, | D060497 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00057940-CU-PN-NC) |
| WALTER E. PINKERTON, JR., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Appellant Glenn Torbett appeals the judgment entered after the trial court granted summary judgment in favor of respondents Walter E. Pinkerton, Jr., Pinkerton Doppelt & Associates, LLP, and Carl Anderson, as Trustee of the Walter E. Pinkerton, Jr. Trust (collectively Pinkerton).  The trial court found the one-year statute of limitations set forth in Code of Civil Procedure[1] section 340.6, subdivision (a) barred Torbett's complaint alleging a single cause of action for professional negligence against Pinkerton.

_____

[1]     All statutory references are to the Code of Civil Procedure.

Torbett contends the trial court erred in granting summary judgment because (1) a triable issue of material fact exists regarding when Torbett knew, or should have known, of the facts giving rise to his professional negligence cause of action against Pinkerton, and (2) the one-year limitations period was tolled until Torbett suffered actual injury, which Torbett claims occurred within one year of the filing of his complaint.

As we explain, we disagree with both contentions and thus affirm the judgment for Pinkerton.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed: Torbett's parents, Melvin and Callie, retained Pinkerton in 2002 to prepare their estate plan, including the Torbett Family Trust (trust). Melvin and Callie had two adult children, Torbett and daughter Janet Knurbein.

According to section 10.1 of the trust, upon the death of the surviving trustor, Torbett would become the sole beneficiary of the trust as it was the "specific intent of [the] [t]rustors to disinherit their daughter Janet Knurbein and her children from any [t]rust [e]state distribution."

Section 1.1 of the trust provided: "Either [trustor] may change or amend the [t]rust without the consent of the other, but only to the benefit of the other. However, upon the death of the first [t]rustor . . . , the other [t]rustor may *not* amend this [t]rust so as to change the beneficiaries thereof." (Italics added.) Section 4.1, subpart d. of the trust stated: "The beneficiaries may not be changed after the death of the first [t]rustor to pass away."

In mid-December 2004, Callie died. In June 2005, Torbett reviewed the trust with

2

his own attorney, and as a result, Torbett came to the "'realization that the [t]rust was going to give him essentially everything,'" inasmuch as Torbett was the sole beneficiary under the trust. Torbett also understood he would be the surviving trustee or successor trustee under the terms of the trust.

Unbeknownst to Torbett, Melvin retained Pinkerton to prepare amendments to the trust on three separate occasions between 2006 and 2009. In July 2006, Pinkerton amended the trust to add Janet as a remainder beneficiary and to name a second successor trustee. At Melvin's direction, Pinkerton amended the trust again on April 2, 2009, to change the remainder beneficiaries of the trust, and created a new trust agreement for the benefit of Janet (e.g., a special needs trust) and a separate trust agreement for the benefit of Janet's children (the children's trust). In connection with the children's trust, Pinkerton prepared and filed a quitclaim deed on April 6, 2009, transferring assets from the trust to the children's trust. Finally, at Melvin's alleged request, Pinkerton prepared a third amendment to the trust on April 7, 2009—the day before Melvin passed away—to name a new first successor trustee in lieu of Torbett. The new first successor trustee was Janet's son-in-law.

Around the time of Melvin's funeral on or about April 14, 2009, the new first successor trustee informed Torbett that Melvin had changed the trust and replaced Torbett as first successor trustee. Also in April 2009, Torbett told Janet and Janet's adult daughter (his niece), Jolynda, that he would be forced to revise his own personal estate documents to account for the loss of his interest in assets of the trust as a result of the trust amendments.

3

On or about May 1, 2009, Pinkerton sent Torbett a notification of the death of Melvin and a copy of the trust and the three amendments prepared by Pinkerton. Torbett was surprised by the first amendment to the trust and concluded then that he had lost an interest in his parents' estate. Torbett also concluded that the first amendment was "close to being unmanageable" because in his view, it required "renting property that [was] so substandard that it would have cost a fortune to bring it up to the ability to rent it out."

Torbett reviewed the trust and its three amendments with his own trust attorney in May 2009. Torbett also had a telephone conversation with a paralegal in the Pinkerton law firm in early May 2009 regarding his concerns that the amendments to the trust were in his own words "inconsistent, unmanageable and unenforceable."

A paralegal at the Pinkerton office, Susan Rudicill, declared under penalty of perjury that she spoke with Torbett on May 1, 2009, regarding the trust and trust amendments. Rudicill declared Torbett told her that "he was upset with the amendments that were made by his father to the [trust]," that the amendments "contradicted the original trust" and that Janet and her children "were taking everything *and should not be taking anything*." (Italics added.) After the telephone call with Torbett, Rudicill prepared a note to Walter Pinkerton, among other members of the law firm, memorializing her conversation with Torbett. Rudicill wrote in that note that Torbett was "very upset" by the changes to the trust and that Torbett wanted his call returned to "explain the changes in the amendments."

Torbett also spoke to Janet and Jolynda in April 2009 and told them he was concerned the trust amendments "were inconsistent, unmanageable and unenforceable."

4

Finally, between May 2009 and August 3, 2009 (a year and at least a day before he filed his complaint), Torbett conferred at least once with his estate attorney regarding the trust and the three amendments.

In April 2010, Torbett filed a petition in the Superior Court of San Diego County to determine the validity of the trust amendments in a probate action titled *In re: The Torbett Family Trust Dated May 14, 2002*, case No. 37-2009-00152050-PR-TR-CTL (the probate action). In the probate action, Torbett generally alleged Pinkerton created invalid trust amendments to the trust.[2]

As relevant here, on August 4, 2010, Torbett filed his complaint for legal malpractice against Pinkerton. Torbett alleged the trust amendments were negligently prepared and defective because, inter alia, they were "contrary to and expressly prohibited by the provisions" of the trust, and they wrongfully transferred trust assets out of the trust.

Pinkerton moved for summary judgment on three grounds: first, Pinkerton argued that Torbett's professional negligence action was barred by the one-year statute of limitations defense codified in section 340.6, subdivision (a); second, Pinkerton argued that Pinkerton owed no legal duty to Torbett; and third, that the doctrine of judicial estoppel applied to Torbett's claim for damages in his professional malpractice action.

In support of summary judgment, Pinkerton proffered evidence that in April/May 2009, Torbett knew, or should have reasonably known, of his potential legal malpractice

----

[2]    In February 2011, Torbett and Janet settled the probate action.

claim against Pinkerton based on the evidence summarized *ante*, to wit: that the trust amendments were contrary to and prohibited by the terms of the trust and that the trust amendments wrongfully caused trust assets to be transferred out of the trust instead of to Torbett. Pinkerton further alleged that Torbett waited until August 4, 2010—more than a year after he acquired, or should have acquired, such knowledge and incurred actual injury—to file his professional malpractice action against Pinkerton.

In opposition,[3] Torbett declared under penalty of perjury that he did not learn the first amendment to the trust conflicted with the provisions of the trust prohibiting a change in beneficiaries after the death of the first settler (e.g., Callie) until so advised by his attorney, Dennis Fay, and that Fay provided this advice and the advice that Pinkerton was negligent in drafting the first amendment to the trust sometime *after* August 13, 2009—the date Fay received copies of the trust and its amendments from the successor trustee. Torbett pointed to an email he sent to Fay on August 14, 2009, stating his belief that Melvin could amend the trust after Callie died: "Why would my father not have the right to change his trust after my [m]other died? Why wouldn't one be allowed to change their trust? My own trust is 'revocable' and I have made changes now that [my daughter] has been born. Is his [Melvin's] not revocable?"

Regarding Torbett's concerns in April/May 2009 that the amendments were "inconsistent, unmanageable and unenforceable," he declared those concerns centered *not*

---

3 As set forth *post*, the trial court sustained various objections to certain evidence proffered by Torbett in support of his opposition to the motion for summary judgment. Torbett has not challenged those evidentiary rulings on appeal and thus we do not consider any of the "evidence" ruled inadmissible by the trial court.

on "whether it was permissible to change the beneficiaries of the [t]rust or whether the drafting attorneys did anything wrong by preparing amendments that changed the beneficiaries of the [t]rust," but rather on whether Melvin was competent when the second and third amendments were drafted, whether the trust could afford to make repairs to the trust's real properties as required under the amendments to the trust and whether Janet and Jolynda, who were then living in two of the trust's real properties, would pay rent to offset some of the repair expenses.

In reply, Pinkerton alleged that by Torbett's own admission, Torbett had all the trust documents in hand in April/May 2009 and had then concluded the amendments were "inconsistent, unmanageable and unenforceable." Pinkerton thus alleged that the one-year limitations period set forth in section 340.6, subdivision (a) was triggered in April/May 2009 because Torbett knew, or should have known, the *facts* constituting the wrongful act or omission by Pinkerton and because he sustained actual injury when trust assets were transferred not to him, but to his sister and her children.

In granting summary judgment in favor of Pinkerton, the trial court ruled as follows:

"[Section] 340.6[, subdivision (a)] provides in relevant part: 'An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.' The section further provides: '[I]n no

event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury. (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.' 'It is well settled that the one-year limitations period of section 340.6 is triggered by the client's discovery of the facts constituting the wrongful act or omission, not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 CalApp.4th 658, 685[(*Peregrine*); see also § 340.6, subd. (a)(1)-(4)].)

"In this case, Plaintiff [Torbett] alleges that Defendants [Pinkerton et al.] negligently prepared three trust amendments on 7/28/06, 4/2/09, and 4/7/09. (Complaint, ¶ 8.) Defendants move for summary judgment on the ground that Plaintiff knew or should have known facts constituting Defendants' negligence more than a year before his complaint was filed. They rely, *inter alia*, on several declarations from Plaintiff's relatives, in which they describe conversations they had with him or overheard from him. For example, his sister [Janet] states that, less than two weeks after her father's funeral on

8

4/14/09, she went to Plaintiff's home to drop off a baby book she found while cleaning their parents' home.  She states:

"[']During my visit to his home, Glenn [Torbett] brought up the issue of the Trust and the changes my father had made.  Glenn mentioned that my father had violated the Trust when he made changes to it.  [¶] . . . [¶]

"[']Approximately one to two weeks after my father's funeral, I spoke with Glenn over the telephone while I was at my parents' house cleaning in preparation for renting out the home per the Trust.  During this conversation, Glenn mentioned the Trust and expressed his belief that the changes my father had made to the Trust conflicted with the original provisions and were not valid.[']  [¶] (Janet Knurbein Decl., ¶¶ 9, 11.)

"This testimony indicates that Plaintiff discovered the facts constituting the wrongful act—i.e., that the amendments to the trust conflicted with the original provisions and were not valid—approximately two weeks after his father's funeral, or on 4/28/09.  Plaintiff would have had one year from that date to file his complaint.  His complaint was not filed until 8/4/10.  This testimony shifts the burden to Plaintiff to raise a triable issue of fact on the statute-of-limitations defense.

"Plaintiff argues that he was not aware of Defendants' wrongful conduct until he contacted an attorney and obtained the attorney's opinions following the attorney's review of the trust and its amendments.  However, as *Peregrine* establishes, the statute of limitations is triggered by the client's discovery of the facts constituting the wrongful act or omission, not by his discovery that such facts constitute professional negligence.  It is irrelevant that Plaintiff was ignorant of his legal remedy or the legal theories underlying

9

his cause of action. Here, Plaintiff suspected in April 2009 that the trust amendments conflicted with the original provisions and were not valid. Plaintiff's own declaration states that he had 'concerns' with the amendments to the trust and even discussed with Defendants in May 2009 his concern that the amendments were 'inconsistent, unmanageable, and unenforceable.' (Plaintiff's Decl., ¶¶ 7, 8.) The statute of limitations thus began running in April or May 2009, not on the date Plaintiff confirmed his suspicions through his conversation with his attorney.

"Plaintiff also states in his declaration that it was not until after he retained an attorney that he formed the opinion that the trust and amendments were inconsistent regarding a change in the beneficiaries. (Plaintiff's Decl., ¶ 16.) However, while he may not have been previously aware of the problem with a change in the beneficiaries, he acknowledges that in May 2009 he was concerned the amendments were inconsistent, unmanageable, and unenforceable. (*Id.* at ¶ 8.) Thus, regardless of what he learned from his attorney about the validity of a change in the beneficiaries, he admits he had suspicions in May 2009 that Defendants had not properly prepared [the] trust documents. He thus admits in his declaration he was aware of *some* facts constituting a wrongful act or omission—i.e., Defendants' negligence in preparing trust documents—in May 2009, at the latest. That he might not [have] been aware of *all* facts—i.e., that the change in beneficiaries was not permitted—does not toll the running of the statute.

"Plaintiff argues that he did not incur actual damages from Defendants' conduct until his attorney, Dennis Fay, invoiced him for charges incurred in challenging the trust documents. However, 'when malpractice results in the loss of a right, remedy, or interest,

10

or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.' (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227.) [¶]

"In this case, Plaintiff alleged in his 2010 petition to determine the validity of the trust amendments that the trust originally provided that all trust assets would pass to Plaintiff, with his sister, Janet, disinherited. (Exh. 2/Petition at 4:17-20.) He alleged that the first amendment to the trust included his sister among those who would receive trust assets. (*Id.* at 4:24-25.) Thus, when Plaintiff's father, Melvin, died in April 2009, Plaintiff lost his interest in [a] portion of the trust assets that, pursuant to the first amendment, would now pass to his sister instead of him. Additionally, two days before he died in April 2009, Plaintiff's father transferred property from his trust to his daughter's trust. (Exh. 7/Quitclaim Deed.) Again, Plaintiff lost any interest in that property as of the date of the transfer, at the latest. Plaintiff thus suffered actual injury in April 2009, not when he hired a lawyer in August 2009. His complaint, filed in August 2010, is untimely. Defendants' motion for summary judgment on statute of limitations grounds is therefore granted.

"Because Defendants' motion is granted on statute-of-limitations grounds, the Court need not address the lack-of-duty and judicial-estoppel arguments raised in Defendants' motion.

"Defendants' request for judicial notice of certain court documents is granted. Defendants' Objection Nos. 1 and 2 are sustained on relevance grounds. Objections Nos. 3-5 are sustained on hearsay grounds. Objection No. 6 is sustained on hearsay and

11

improper-opinion grounds. Objection No. 7 cannot be considered by the Court, as it cannot be determined which objections apply to which portions of Paragraph 12. Objection No. 8 is sustained on legal-conclusion and improper-opinion grounds. Objection No. 9 is sustained on hearsay grounds as to the first sentence in Paragraph 16; the remainder of the paragraph does not constitute hearsay."[4]

## DISCUSSION

The overarching issue before this court is whether the trial court properly granted summary judgment in favor of Pinkerton because the one-year statute of limitations in section 340.6, subdivision (a) bars Torbett's legal malpractice claim against Pinkerton. It is axiomatic that a trial court properly grants summary judgment if the record establishes no triable issue as to any material fact, and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A defendant may satisfy that burden by showing there is a complete defense to the cause of action at issue. (§ 437c, subd. (p)(2).) Once a defendant has met that burden, as the trial court here properly recognized, the burden then shifts to the plaintiff to produce evidence demonstrating a triable issue exists as to the defense asserted by the defendant. (See *ibid.*; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850, fn. omitted.)

---

[4] Neither party has challenged on appeal these evidentiary rulings made by the trial court.

12

"[W]e review the record de novo, considering all the evidence set forth in the moving and opposition papers" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334), including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken" (§ 437c, subd. (b)(1) & (2)).  "Inasmuch as the grant or denial of a motion for summary judgment strictly involves questions of law, we must reevaluate the legal significance and effect of the parties' moving and opposing papers.  [Citations.]"  (*Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 57.)

As the trial court recognized, section 340.6, subdivision (a) provides in part:  "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the *facts* constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . .  [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:  [¶]  (1) The plaintiff has not sustained actual injury.  [¶]  (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.  [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.  [¶]  (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."  (Italics added.)

13

A. *Knew or Should Have Known of the Facts Constituting the Wrongful Act or Omission*

Here, the *undisputed* evidence in the record shows Torbett discovered the *facts* constituting Pinkerton's alleged negligence—changes to the trust that were in Torbett's own words "inconsistent" *and* "unenforceable"—more than one year before he filed his professional malpractice action against Pinkerton. (See § 340.6, subd. (a).)

Specifically, the record shows that Torbett was aware *before* April 2009 that he was the sole beneficiary under the trust; that in April/May 2009, he first became aware of the three amendments to the trust and realized then he was no longer the sole beneficiary of the trust; that Torbett reviewed the trust and the amendments with his own trust attorney in May 2009; that Torbett told Janet and Jolynda in April/May 2009 that the amendments to the trust were "inconsistent, unmanageable and unenforceable"; that Torbett was "very upset" when he spoke to Rudicill at the Pinkerton law firm on May 1, 2009, regarding the changes to the trust and told Rudicill the amendments "contradicted the original trust," and Janet and Jolynda "were taking everything *and should not be taking anything*" (italics added); that as a result of the first trust amendment he reviewed in April/May 2009, Torbett concluded then that he had lost an interest in his parents' estate; and that because of the amendments to the trust, Torbett told Janet and Jolynda in April 2009 that he would be forced to revise his own estate plan accordingly.[5]

---

[5]    Torbett testified in his deposition that after he reviewed the amendments to the trust in April/May 2009, he concluded Pinkerton had prepared "inconsistent" amendments because the "wording in the first trust and the amendments [was]

14

That Torbett did not ostensibly learn he had a viable cause of action for negligence against Pinkerton until after August 13, 2009, when his newly-retained trust attorney Fay so advised him, does not change our conclusion in this case. "It is well settled that the one-year limitations period of section 340.6 "'is triggered by the client's discovery of 'the facts constituting the wrongful act or omission,' not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. 'It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.'" [Citation.]'" (*Peregrine*, *supra*, 133 Cal.App.4th at p. 685; see also *McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 803 ["The statute of limitations is not tolled by belated discovery of *legal theories,* as distinguished from belated discovery of *facts*."].)

Although there is no triable issue that Torbett knew, or should have known, in April/May 2009 of the *facts* underlying his professional malpractice action against

inconsistent [because] my father couldn't change the beneficiaries." However, in his *subsequent* declaration in opposition to the motion for summary judgment, Torbett explained that he was not sure when he came to this conclusion, "but it had to have been after I retained Dennis Fay in August 2009 to represent me in the probate proceedings." In independently affirming summary judgment, we have not relied on this portion of Torbett's deposition. Nonetheless, we recognize that Torbett's statements in his declaration explaining (away) his earlier deposition testimony could have been properly disregarded because "'a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses.' [Citations.] In determining whether any triable issue of material fact exists, the trial court may give 'great weight' to admissions made in discovery and 'disregard contradictory and self-serving affidavits of the party.' [Citation.] . . . Where a declaration submitted in opposition to a motion for summary judgment clearly contradicts the declarant's earlier deposition testimony or discovery responses, the trial court may fairly disregard the declaration and "'conclude there is no *substantial* evidence of the existence of a triable issue of fact."' [Citation.]" (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)

15

Pinkerton, our inquiry does not end there. We next consider whether the one-year limitation period was tolled based on Torbett's contention he did not suffer "actual injury" within the meaning of subdivision (a)(1) of section 340.6 until August 10, 2009, when Fay began to charge Torbett legal fees in connection with Torbett's challenge to the trust amendments.

B. *Actual Injury*

The "actual injury" tolling provision in subdivision (a)(1) of section 340.6 "is rooted in the required element of 'actual loss or damage' in a professional negligence action. [Citation.] 'If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.' [Citation.] '[D]etermining when actual injury occurred is predominantly a factual inquiry. [Citations.] When the material facts are undisputed, the trial court can resolve the matter as a question of law . . . .' [Citation.]

"'The test for actual injury under section 340.6 . . . is whether the plaintiff has sustained any damages compensable in an action . . . against an attorney for a wrongful act or omission arising in the performance of professional services. . . .' [Citation.] 'Ordinarily, the client already has suffered damage when it discovers the attorney's error.' [Citation.] '[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period.' [Citation.] 'There is no requirement that an adjudication or settlement must first confirm a causal nexus between

16

the attorney's error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor.' [Citation.]

"'[S]ection 340.6, subdivision (a)(1), will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice.' [Citation.] '[T]he limitations period is not tolled after the plaintiff sustains actual injury [even] if the injury is, in some sense, remediable. [Citation.] Furthermore, the statutory scheme does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed.' [Citation.] On the other hand, 'the statute of limitations will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence' because the plaintiff cannot allege actual injury resulted from an attorney's malpractice. [Citation.]" (*Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1147-1148.)

Significant to the case before us, "when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred. [Citations.] This approach promotes the legislative goal of requiring diligent prosecution of known claims to provide finality and predictability in legal affairs, and to ensure that claims are resolved while evidence remains reasonably available and fresh." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227.)

17

Here, there is undisputed evidence in the record that Torbett sustained actual injury in April/May 2009, at the latest, as a result of the amendments to the trust as shown by: (i) his statement to Rudicill on May 1, 2009 that Janet and Jolynda "were taking everything *and should not be taking anything*" (italics added), inasmuch as Torbett was the sole beneficiary of the trust before the amendments were prepared; (ii) his recognition during this same time frame that as a beneficiary he would be receiving far less from the trust; and (iii) his statements to Janet and Jolynda in April 2009 that he would need to revise his own estate plan as a result of the changes to the trust prepared by Pinkerton. (See *Foxborough v. Van Atta*, *supra*, 26 Cal.App.4th at p. 227.)

That Torbett in the probate action may have succeeded in invalidating the trust amendments does not change our conclusion that he sustained actual injury in April/May 2009. "An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred. [Citations.] Thus, we must distinguish between an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 754.)

We thus independently conclude the trial court properly found Torbett sustained "actual injury" within the meaning of subdivision (a)(1) of section 340.6 in April/May 2009, at the latest, when trust assets that otherwise would have gone to Torbett were transferred out of the trust and went to other beneficiaries as a result of the trust amendments prepared by Pinkerton. (See *Foxborough v. Van Atta*, *supra*, 26

18

Cal.App.4th at p. 227; cf. *Adams v. Paul* (1995) 11 Cal.4th 583, 590 [an intended beneficiary of a negligently prepared testamentary instrument is not harmed when the instrument is prepared because at that point "the attorney's negligence may have created only the potential for future harm"]; *Heyer v. Flaig* (1969) 70 Cal.2d 223 [beneficiary's actionable injury for negligence in drafting of will did not arise until testator's death because no recognized legal rights under will until that time], disapproved on another ground as stated in *Laird v. Blacker* (1992) 2 Cal.4th 606, 621 [rejecting "irremediable damage" rule announced in *Heyer v. Flaig*]; *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 566 [actual injury did not arise when law firm negligently drafted various provisions in a partnership agreement because that negligence "created only the potential for harm" as it was not inconceivable that the negligence of the law firm "would have never ripened into actual injury."].)

DISPOSITION

The judgment in favor of Pinkerton is affirmed. Pinkerton is awarded the costs on appeal.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

O'ROURKE, J.

_____

IRION, J.

19