[No. A061040. First Dist., Div. Three. June 28, 1994.]

FOXBOROUGH, Plaintiff and Appellant, v.
DAVID VAN ATTA et al., Defendants and Respondents.

## COUNSEL

Liccardo, Rossi, Sturges & McNeil, Ronald R. Rossi and Susan R. Reischl for Plaintiff and Appellant.

Gordon & Reed, Diane R. Crowley and James M. Hanavan for Defendants and Respondents.

## OPINION

CHIN, J.—Foxborough, a general partnership, appeals after the trial court found that the statute of limitations, Code of Civil Procedure section 340.6, barred Foxborough's legal malpractice action.[1] Foxborough had sued its former attorney, respondent David Van Atta, alleging that he failed to protect Foxborough's interests in a condominium development transaction.[2]

Because the alleged malpractice occurred in a transactional setting, this appeal presents a novel context for construing subdivision (a)(1) and (a)(2) of section 340.6, which respectively toll the statute of limitations during the time that "[t]he plaintiff has not sustained actual injury," and "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." Thus, we must determine when Foxborough "sustained actual injury" (§ 340.6, subd. (a)(1)) and whether Van Atta, by acting years later as a consultant and expert witness in related litigation, "continue[d] to represent [Foxborough] regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." (§ 340.6, subd. (a)(2).)

We conclude that Foxborough sustained actual injury when it lost the right Van Atta was to secure indefinitely, and that Foxborough's pursuit of a possible third party remedy did not toll the limitations period. We also conclude that Van Atta's representation of Foxborough ceased long before he assumed the roles of consultant and expert witness. Finally, we find no

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] Foxborough also sued the law firm in which Van Atta was a partner at the time of the transaction, respondent Miller, Starr & Regalia. For stylistic convenience, we refer to Van Atta in the singular, but references to him include the law firm where appropriate. (See *Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 844, fn. 1 [236 Cal.Rptr. 696].)

abuse of discretion by the trial court in denying Foxborough leave to amend its complaint. We affirm the judgment.

FACTS[3]

Foxborough owned two adjoining parcels of land in San Jose. On one parcel was a 296-unit apartment complex (the Apartments); the smaller parcel was undeveloped. From November 1978 through January 1981, Foxborough retained Van Atta to perform legal services concerning the two parcels. Van Atta was to assist in converting the Apartments into condominiums, transferring the Apartments to Daon Corporation (Daon) in a property exchange, and securing the right to develop the smaller parcel with condominiums that Foxborough could automatically annex to the Apartments without the approval of Daon or the owners of condominiums in the Apartments. The automatic annexation right, without time constraints, was of particular importance to Foxborough.

The exchange agreement drafted by Van Atta and signed by Daon and Foxborough in 1979, provided, in pertinent part: ". . . DAON hereby agrees to incorporate provisions in all of its condominium applications and documentation which will anticipate and allow the annexation of the condominium units located on the adjoining Parcel into the condominium project located on the San Jose Property, automatically without further approval of DAON or the future owner of the San Jose Property, except as may be required by law and Department of Real Estate regulations . . . ." Then as now, a regulation required that any automatic annexation of land to an existing condominium take place within three years after issuance of the original public report for the immediately preceding phase of the condominium's development; failing that, annexation requires approval by a two-thirds vote of the condominium association members. (Cal. Code Regs., tit. 10, § 2792.27, subds. (a), (b)(4); see Cal. Condominium and Planned Development Practice (Cont.Ed.Bar 1984) State Regulation of Common Interest Subdivision Sales, § 3.81, pp. 244-245.)

---

[3]In setting forth the facts, we follow well-established rules governing review of summary judgments. We strictly construe the moving parties' papers and liberally construe those of the opposing parties to determine if there is a triable issue of material fact. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708].) However, a defendant may rely on the complaint's factual allegations, which constitute judicial admissions. (*Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [266 Cal.Rptr. 695]; *Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 409 [266 Cal.Rptr. 34].) Such admissions are conclusive concessions of the truth of a matter and effectively remove it from the issues. (*Uram, supra,* 217 Cal.App.3d at p. 1433; *Troche, supra,* 217 Cal.App.3d at p. 409; see 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 644, p. 630.) A plaintiff cannot create a triable issue through declarations that contradict the complaint's factual allegations. (*Troche, supra,* 217 Cal.App.3d at p. 409; *Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 146 [142 Cal.Rptr. 46].)

After waiting for favorable economic conditions, Foxborough decided in 1984 to build 20 condominium units on its retained parcel. In late 1984 to early 1985, Foxborough learned that documents Daon filed with Santa Clara County in 1980 limited Foxborough's annexation rights to the three-year regulatory deadline. By February 1985, Foxborough knew it could not automatically annex its undeveloped parcel to the Apartments because the three-year period had expired on May 8, 1983.

From 1981 to 1985, Van Atta had no contact or involvement with Foxborough concerning either its dealings with Daon or the development and annexation of the property Foxborough kept. Foxborough contacted Van Atta in February 1985 and hired him to confront Daon and pursue the appropriate legal remedy concerning Foxborough's annexation rights. Van Atta wrote two letters to Daon on Foxborough's behalf, one in February 1985 and a brief follow-up letter in March, addressing the loss of Foxborough's automatic annexation rights. Van Atta's February 1985 letter attributed this loss to Daon's failure to inform Foxborough of the three-year deadline under the regulation. The letter requested that Daon assist Foxborough in obtaining the necessary annexation approval from the condominium owners. The letter also stated that Foxborough would hold Daon responsible for expenses and losses Foxborough incurred because of the lost automatic annexation rights. Daon did not respond to these letters, though Van Atta wrote that it was "urgent" that Daon "respond immediately."

In August 1985, Foxborough retained the law firm of Caputo, Liccardo, Rossi, Sturges & McNeil (the Caputo firm) to represent it in an action against Daon, which was filed on August 23, 1985 (the Daon litigation). Foxborough's complaint against Daon sought damages under several different theories for Daon's alleged failure to notify Foxborough, before the three-year regulatory period expired, that the automatic annexation right had been limited to that period. The record contains no evidence that Van Atta had any contact or involvement with Foxborough or the Caputo firm during the next two years.

Van Atta left Miller, Starr & Regalia in July 1987 and joined the law firm of Graham & James. In late August 1987, the Caputo firm wrote to Van Atta and retained him as a consultant and expert witness for the Daon litigation, in which he provided deposition and trial testimony. During the trial, Daon successfully moved for judgment at the close of Foxborough's case. The court entered judgment against Foxborough on March 2, 1990, and ordered it to pay Daon's attorney fees and costs.

On June 29, 1990, Foxborough filed this action against Van Atta and Miller, Starr & Regalia. The complaint alleged that Van Atta failed to advise

Foxborough of the existence and effect of the regulation or to advise Foxborough on how automatic annexation otherwise could have been accomplished. Foxborough's alleged damages included the loss of the ability to effect annexation at all and the attorney fees incurred in the Daon litigation.

On October 15, 1992, Van Atta moved for summary judgment on the ground that Foxborough's complaint was barred by the statute of limitations. At the hearing on December 9, 1992, Foxborough orally moved for leave to amend its complaint to add a cause of action based on Van Atta's actions as a consultant and expert in the Daon litigation. The trial court denied the motion for leave to amend and granted summary judgment. The judgment for Van Atta was filed on January 21, 1993; this timely appeal followed.

## DISCUSSION

Section 340.6 contains the statute of limitations for legal malpractice. It states, in relevant part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." (§ 340.6, subd. (a)(1), (a)(2).) (1) "Section 340.6, subdivision (a), states that 'in no event' shall the prescriptive period be tolled except under those circumstances specified in the statute. Thus, the Legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute." (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*).)

Foxborough's complaint acknowledged that in December 1984, Foxborough learned that Van Atta had not advised it of the three-year annexation regulation and had not obtained the automatic annexation rights that Foxborough wanted. Thus, more than four years before it filed the complaint, Foxborough discovered, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission on which it based the complaint. (See § 340.6, subd. (a).) As a consequence, Foxborough's contentions on appeal focus on the "actual injury" (§ 340.6,

subd. (a)(1)) and continuous representation (§ 340.6, subd. (a)(2)) tolling provisions of the statute.[4]

### *Actual Injury*

 Foxborough contends that it did not suffer actual injury as a result of Van Atta's negligence until it lost the Daon litigation. In Foxborough's view, so long as it had a chance to recover damages from Daon, it could have recouped its losses and cured Van Atta's alleged negligence. Foxborough bases its argument on a literal application of *Laird.*

In *Laird*, the court granted review to determine whether the legal malpractice statute of limitations is tolled while a client appeals from a judgment on which the malpractice claim is based. (*Laird, supra,* 2 Cal.4th at p. 608.) The court held that under section 340.6, subdivision (a)(1), the limitations period commences on entry of an adverse judgment or final order of dismissal. (*Laird, supra,* at pp. 609, 615.) Accordingly, the plaintiff in *Laird* "sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal." (*Id.,* at p. 615.)

In *Laird*, the attorney defendants failed to prosecute the plaintiff's suit, thereby creating the legal basis for the suit's dismissal. (*Laird, supra,* 2 Cal.4th at pp. 609-610.) Before judgment, the *Laird* defendants' malpractice had produced only potential injury, which was not realized until the dismissal. (See *id.,* at p. 615; cf. *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433] ["The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.]"].) When considered in its context, *Laird* does not purport to establish an adverse judgment or order of dismissal as the sole criteria for "actual injury" under section 340.6, subdivision (a)(1). (See *Bennett* v. *McCall* (1993) 19 Cal.App.4th 122, 127 [23 Cal.Rptr.2d 268]; *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165, 1174 [16 Cal.Rptr.2d 837].)

Clients employ attorneys' professional skills and judgment throughout the fields of personal and commercial affairs. The occasions for and forms of attorney error reflect the diverse tasks and responsibilities attorneys undertake. The variety of situations in which such error can occur, and the injuries

---

[4]The parties have not addressed, either in the trial court or on appeal, when the alleged wrongful acts or omissions occurred. As a result, we do not consider whether the four-year limitations period of section 340.6, which runs from the wrongful act or omission, might apply to this case. (See § 340.6, subd. (a).)

that can result, make it difficult to formulate and apply bright-line tests for "actual injury" that resolve statute of limitations problems in all settings. Even the seemingly straightforward circumstance of a failure to file a timely suit resists a hard and fast rule. (Compare *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436, 1442-1444 [13 Cal.Rptr.2d 406], with *Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841, 848-850 [22 Cal.Rptr.2d 663].) In any event, the facts and circumstances of each case determine when the plaintiff suffered actual injury. (See *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 202.)

Unlike the context of *Laird,* Van Atta's alleged negligence did not occur in the litigation. Instead, Foxborough alleged that the Daon litigation was one of the consequences of that negligence. The judgment in the Daon litigation was not the first realization of an injury from the alleged malpractice, but rather the loss of an alternative means for obtaining monetary relief for that injury. Though Van Atta's alleged negligence may have contributed to the Daon litigation judgment, that judgment was but the last in time of the alleged injuries. In light of this factual difference, *Laird* is not dispositive in this case.

Nevertheless, *Laird* reinforced principles that generally guide determination of when a plaintiff sustains actual injury. When the Legislature adopted section 340.6 in 1977, it codified the discovery rule of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] and *Budd* v. *Nixen, supra,* 6 Cal.3d 195. (*Laird, supra,* 2 Cal.4th at p. 611.) Under those decisions, the limitations period commenced when the cause of action accrued—when the client discovered or should have discovered the facts essential to the malpractice claim and suffered appreciable and actual harm from the malpractice. (*Ibid.*) But as *Budd* stated: "The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Budd, supra,* 6 Cal.3d at p. 201.)

In tolling the limitations period until the plaintiff has "sustained actual injury" (§ 340.6, subd (a)(1)), the Legislature used the term "actual" to focus inquiry on the fact of damage, and omitted qualifiers to forestall confusion over the extent of damage needed to trigger the limitations period. (*Laird, supra,* 2 Cal.4th at p. 613; see also 2 Mallen & Smith, Legal Malpractice (3d ed. 1989) Statutes of Limitations, § 18.11, p. 105.) Therefore, actual injury need not be defined in terms of a monetary amount. (*Laird, supra,* 2 Cal.4th at p. 614.) Similarly, the limitations period is not tolled after the plaintiff sustains actual injury if the injury is, in some sense,

remediable. (*Laird, supra*, 2 Cal.4th at pp. 611, 615-617.) Furthermore, the statutory scheme does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed.

Thus, when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred. (See *Safine* v. *Sinnott* (1993) 15 Cal.App.4th 614, 617-618 [19 Cal.Rptr.2d 52]; 2 Mallen & Smith, Legal Malpractice (1993 pocket supp.) Statutes of Limitations, § 18.11, pp. 38-40.) This approach promotes the legislative goal of requiring diligent prosecution of known claims to provide finality and predictability in legal affairs, and to ensure that claims are resolved while evidence remains reasonably available and fresh. (Cf. *Laird, supra*, 2 Cal.4th at pp. 614, 618.)

Applying these principles to the undisputed facts in this case, we conclude that Foxborough sustained actual injury well outside the statutory period. One of Foxborough's key objectives was to secure an unrestricted right to annex subsequent development of the retained parcel to the Apartments. During the three-year period that Foxborough could have effected an automatic annexation under the pertinent regulation (Cal. Code Regs., tit. 10, § 2792.27, subds. (a), (b)(4)), Van Atta's alleged negligence created only the potential for harm, because Foxborough could have proceeded with the development and annexation. But when the three-year period for automatic annexation expired on May 8, 1983, Foxborough lost the right it had retained Van Atta to secure. Foxborough then had to resort to the more onerous, expensive, and unpredictable task of obtaining annexation approval from the Apartments' owners, the very situation it hired Van Atta to avoid. (Cf. *Johnson* v. *Simonelli* (1991) 231 Cal.App.3d 105, 110 [282 Cal.Rptr. 205].)

Therefore, Foxborough sustained actual injury before its February 1985 discovery of the facts constituting the alleged wrongful act or omission. Thus, subdivision (a)(1) of section 340.6 could not toll the one-year limitations period that commenced with that discovery.

### Continues to Represent

The statute also tolls the limitations period during the time that "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." (§ 340.6, subd. (a)(2).) "This 'continuous representation' rule was adopted in

order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.)" (*Laird, supra*, 2 Cal.4th at p. 618.)

Foxborough argues that the limitations period was tolled from February 1985 through judgment in the Daon litigation. Foxborough's argument is based on the contention that the plain language of the tolling provision does not require a single period of representation that continues uninterrupted from the wrongful act or omission. Instead, a representation regarding the same subject matter, commenced after discovery of the negligence, can toll the one-year limitations period. There is some logic to this position, because there is no need to toll a limitations period that has not commenced. As Foxborough sees the matter, Van Atta continuously represented it by writing to Daon in February and March 1985 and then acting as a consultant and expert witness for the Daon litigation.

Van Atta contends that the continuous representation rule applies only so long as the attorney and client continue the representation in which the negligence occurred. Van Atta argues that the tolling provision of section 340.6, subdivision (a)(2), does not apply to this case because there was a four-year gap between completion of his services for the Daon transaction in January 1981 and his next contact with Foxborough regarding Daon in February 1985.

We need not resolve which of these competing contentions is the correct interpretation of section 340.6, subdivision (a)(2). More than four years passed between Foxborough's discovery of the alleged negligence and the filing of this suit. Consequently, even if we applied Foxborough's interpretation of the tolling provision, there still had to be evidence that Van Atta continuously represented Foxborough from February 1985 to within one year of the suit's filing. As we discuss below, the record fails to disclose a triable issue of material fact on this point.

Foxborough equates representation that tolls the statute with the broad standards applicable to attorney-client relationships in general, including the occasions for privileged communications. However, the precise and limited language used by the Legislature does not support the reading that Foxborough gives to "represent." The continuous representation rule, as codified in section 340.6, subdivision (a), is not triggered by the mere existence of an attorney-client relationship. Instead, the statute's tolling

language addresses a particular phase of such a relationship—representation regarding a specific subject matter. Moreover, the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff. (*Von Rott* v. *Johnson* (1983) 148 Cal.App.3d 608, 609, 613 [196 Cal.Rptr. 55]; but see *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 333 [187 Cal.Rptr. 14] [attorney represents client so long as attorney assists client with unsettled matters incidental to case].) Therefore, "[t]he inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated." (2 Mallen & Smith, Legal Malpractice, Statutes of Limitations, *supra*, § 18.12, at p. 119, fn. omitted.)

■ We assume, without deciding, that Foxborough is right in saying that Van Atta's actions in February and March of 1985 constituted representation that would toll the limitations period. (Cf. *Gurkewitz* v. *Haberman*, *supra*, 137 Cal.App.3d at pp. 333-334.) However, the record establishes as a matter of law that no later than August 23, 1985, Van Atta's representation of Foxborough regarding the Daon matter had terminated. By that date, Daon had not responded to Van Atta's February letter, Foxborough had retained the Caputo firm to represent it in an action against Daon, and the Caputo firm had filed the Daon suit as Foxborough's counsel of record. Further, the record conspicuously lacks any indication of contact between Van Atta and Foxborough or the Caputo firm in the following two years.[5] When Van Atta was recontacted in August 1987, his role was changed from being Foxborough's representative in negotiations to being an expert witness and consultant retained by the Caputo firm.

The continuous representation tolling rule assumes a relationship between the parties that is not sporadic, but which develops and continues from the professional services in which the alleged malpractice occurred. (See *Hensley* v. *Caietti*, *supra*, 13 Cal.App.4th at pp. 1171-1172; *Rubenstein* v. *Barnes* (1987) 195 Cal.App.3d 276, 283 [240 Cal.Rptr. 535]; *Shapero* v. *Fliegel*, *supra*, 191 Cal.App.3d at pp. 847-848.) Here, the retention of new counsel to pursue the matter, the lack of any contact with Van Atta for a prolonged period, and the significant change in Van Atta's role and responsibilities for his final involvement, demonstrate that Van Atta did not continue to represent Foxborough after August of 1985. When Foxborough's suit against Van Atta was filed in June 1990, the suit was barred by the statute of limitations, section 340.6.

---

[5]Foxborough argues that its attorney's declaration, by stating that Van Atta was retained "[i]n connection with [the Daon] litigation," supports a reasonable inference that Van Atta was involved from beginning to end. However, the vague statement by Foxborough's attorney does not create a triable issue because it does not conflict with Van Atta's declaration that he was retained after August 25, 1987.

## The Denial of Leave to Amend

During the December 1992 hearing on the summary judgment motion in the trial court, Foxborough orally moved for leave to amend its complaint to state a separate claim based on Van Atta's actions during the Daon litigation. Apparently, the factual premise for the new cause of action was Van Atta's trial testimony that the regulation alone governed annexation and that the three-year limitation was not subject to exemption or contractual waiver. According to Foxborough, this testimony surprised it and its trial counsel and undercut the basis for its decision to pursue the Daon litigation, which ended with the March 1990 judgment for Daon.

The trial court, "in furtherance of justice," may allow amendment of a pleading. (§ 473.) Although there is a strong policy in favor of liberal allowance of amendments, the trial court's discretion will not be disturbed on appeal unless it clearly has been abused. (*Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 296 [216 Cal.Rptr. 443, 702 P.2d 601].) Of course, if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1125, p. 541.)

Foxborough sought leave in December 1992 to assert a new claim against Van Atta for negligently advising Foxborough on the theory used to sue Daon. The asserted factual basis for this claim arose from Van Atta's testimony during the Daon trial in October 1989. The judgment against Foxborough in the Daon litigation was filed on March 2, 1990. Therefore, as to the proposed new claim, Foxborough learned the facts constituting the alleged malpractice and suffered actual injury more than one year before it sought leave to amend its complaint and assert the claim. Section 340.6 would bar the claim unless the amendment related back to the filing of the original complaint.

An amended complaint relates back to the original complaint when it (1) is based on the same general set of facts as the original, (2) seeks relief for the same injuries, and (3) refers to the same incident. (*Carrier Corp.* v. *Detrex Corp.* (1992) 4 Cal.App.4th 1522, 1530 [6 Cal.Rptr.2d 565].) The amended pleading will not relate back to the original if it refers to a different incident, even though it alleges the same resulting injury. (*Espinosa* v. *Superior Court* (1988) 202 Cal.App.3d 409, 414 [248 Cal.Rptr. 375].)

Foxborough's proposed amended complaint would not have related back to the filing of the original complaint. Although both the original and proposed amended complaints refer to the Daon litigation as an injury, they

attributed the injury to different incidents. Foxborough originally alleged that Van Atta negligently performed services for the Daon transaction, completed in January 1981, resulting in the loss of annexation rights and the Daon litigation. By contrast, the alleged negligence in Foxborough's proposed new cause of action would have occurred, at the earliest, in February 1985, when Van Atta's letter to Daon claimed that Daon was responsible for Foxborough's losses.

The trial court did not abuse its discretion in denying Foxborough leave to amend its complaint. The proposed amendment would have been futile because it was barred by the statute of limitations.

### DISPOSITION

The judgment is affirmed.

White, P. J.. and Merrill, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 20, 1994.