Filed 4/22/16  Padilla v. Shore, McKinley, Conger & Scott CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MILA S. PADILLA et al., | C077204 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39201300295881CUPNSTK) |
| v. | |
| SHORE, McKINLEY, CONGER & SCOTT, LLP, | |
| Defendant and Respondent. | |

The trial court sustained without leave to amend defendant law firm's demurrer to the 2013 complaint for legal malpractice filed by plaintiffs Mila S. Padilla, individually and as trustee of the Mila S. Padilla Separate Property Trust, and D.I.K. Tracy Enterprises, Inc. (plaintiffs).  The court determined that plaintiff Padilla not only knew of the alleged malpractice six years before the complaint was filed but had suffered an actual injury in 2007 when she participated in litigation against her lessee/optionee and filed an action against the attorneys who drafted the agreement but failed to include a valuation method to employ when the option was exercised.[1]  Thus, the one-year statute

---

[1]  The 2007 complaint was against Jerry D. Hall (now deceased) and Brown, Hall, Shore & McKinley, LLP, the predecessor firm to defendant and respondent Shore, McKinley, Conger & Scott, LLP.

1

of limitations was not tolled beyond 2007 and the statute of limitations barred prosecution of a second malpractice complaint filed six years later.  (Code Civ. Proc., § 340.6, subd. (a)(1).)

Defendant insists that plaintiffs' allegation in their 2007 complaint that the law firm carelessly and negligently drafted the lease "so as to prevent valuation of the fair market value of the property for purchase by the lessee under the option, which has resulted in special damages suffered by Plaintiffs in an amount in excess of the jurisdictional limits of this court," constitutes a judicial admission that by 2007 they had incurred sufficient damages to prevent tolling of the statute of limitations.  Plaintiffs disagree, insisting the complaint was not verified or ever served, the case was dismissed in the absence of any factual findings, and the boilerplate allegations were made in a separate lawsuit and are not binding in the current litigation.

Notwithstanding the zeal with which the parties debate this issue, it is unnecessary to resolve.  The judgment is affirmed, not because plaintiffs' allegations in the 2007 complaint constitute a "judicial admission," but because plaintiffs suffered an actual injury within the meaning of section 340.6, subdivision (a)(1) of the Code of Civil Procedure when they participated in the litigation with the optionee and the law firm to vindicate their rights.  (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739 (*Jordache*); *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217 (*Foxborough*).)

## FACTS

In 2000 defendant's predecessor law firm prepared a real property lease, including an option to buy, for landlord Padilla and tenants BAPH3, Inc. (BAPH3).  The lease "did not provide a formula or mechanism for appointed appraisers to make a consensus determination of fair market value of the property in the foreseeable event the parties disagree."  Sometime before December of 2007 BAPH3 exercised its option to purchase

2

the property, but in the absence of a value formula or mechanism for determining value, the parties became embroiled in litigation.

On December 28, 2007, plaintiffs filed a malpractice action against defendant's predecessor. In the initial complaint, plaintiffs alleged that the law firm's negligence in drafting the lease and other documents prevented the valuation of the fair market value of the property for purchase by the lessee under the option and resulted in special damages suffered by plaintiffs. Specifically, "[a]s a result of Defendants' negligence, Plaintiffs and Baph3, Inc. entered into protracted litigation in the Superior Court of the County of San Joaquin, Case No. CV032859. A judgment was entered in that action on or about June 8, 2012. The judgment in said action, and following settlement agreement, resulted in economic damage and economic losses to Plaintiffs."

## DISCUSSION

In reviewing the sufficiency of a complaint to state a cause of action or of an answer to state an affirmative defense as a matter of law, we consider the facts properly pleaded as admitted as well as the matters judicially noticed. (*Setliff v. E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1533.) A demurrer is properly sustained when the complaint or facts judicially noticed disclose a defense, such as the statute of limitations, that would bar recovery. (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971-972.) " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.]" (*Eckler v. Neutrogena Corp.* (2015) 238 Cal.App.4th 433, 439.) Our review of the dismissal is de novo; our review of the trial court's ruling denying plaintiffs the opportunity to amend is for an abuse of discretion. (*Id.* at p. 438.)

The sole issue raised by this appeal is whether the statute of limitations bars plaintiffs' attorney malpractice action. Section 340.6 of the Code of Civil Procedure contains the statute of limitations for legal malpractice. It states, in relevant part: "(a) An

3

action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury."

Discovery of the malpractice is not at issue. Plaintiffs had noticed the lease did not provide the guidance they expected in determining the value of the property at least by December 2007, when they filed the initial complaint. More than six years then passed before they filed the instant lawsuit. As a consequence, plaintiffs' contentions on appeal focus not on whether plaintiffs knew or should have discovered the facts constituting the wrongful act or omission, but on whether the "actual injury" tolling provision of Code of Civil Procedure section 340.6, subdivision (a)(1) applies. They insist they did not sustain actual injury until the lawsuit with BAPH3 was resolved and judgment was entered in April 2012. California courts have soundly rejected the same argument.

In *Foxborough*, *supra*, 26 Cal.App.4th 217, Foxborough, a general partnership, owned two adjoining pieces of property. It hired David Van Atta to perform legal services concerning the two parcels. Van Atta was to assist in converting apartments on one of the parcels into condominiums, in transferring the apartments to Daon Corporation in a property exchange, and in securing the right to build condominiums on the smaller parcel that Foxborough could automatically annex to the apartments without the consent of Daon or the owners of the condominiums on the larger parcel. The automatic annexation provision was extremely important to Foxborough. Foxborough and Daon signed the exchange agreement in 1979. (*Id*. at p. 222.)

4

Unbeknownst to Foxborough, a regulation required that any automatic annexation of property to an existing condominium project must be completed within three years or the annexation would have to be approved by the condominium association members by a two-thirds majority. (*Foxborough*, *supra*, 26 Cal.App.4th at p. 222.) Foxborough did not move forward on the development of the retained parcel until 1984, at which time it learned that Daon had filed documents with the county limiting Foxborough's annexation rights to the three-year regulatory period. By February 1985 Foxborough knew it could not automatically annex its undeveloped parcel to the apartments because the three-year period had expired on May 8, 1983. (*Id*. at p. 223.) Foxborough hired Van Atta to pursue the appropriate legal remedy against Daon. (*Ibid.*) Daon did not respond to Van Atta's letters. (*Ibid.*)

Foxborough hired another law firm and initiated litigation against Daon in August 1985. Foxborough lost and judgment was entered on March 2, 1990. (*Foxborough*, *supra*, 26 Cal.App.4th at p. 223.) Three months later, Foxborough filed a malpractice action against Van Atta and his former law firm, alleging that Van Atta had failed to advise Foxborough of the existence and effect of the regulation or to advise Foxborough on how automatic annexation otherwise could have been accomplished. (*Id*. at pp. 223-224.)

Van Atta filed a motion for summary judgment on the ground that the statute of limitations barred the malpractice action. (*Foxborough*, *supra*, 26 Cal.App.4th at p. 224.) Foxborough insisted, as plaintiffs do here, that it did not suffer actual injury as a result of its lawyer's negligence until it lost the Daon litigation. (*Id*. at p. 225.) Not so, concluded the Court of Appeal.

"In tolling the limitations period until the plaintiff has 'sustained actual injury' ([Code Civ. Proc.,] § 340.6, subd. (a)(1)), the Legislature used the term 'actual' to focus inquiry on the fact of damage, and omitted qualifiers to forestall confusion over the

extent of damage needed to trigger the limitations period.  [Citations.]  Therefore, actual injury need not be defined in terms of a monetary amount. . . .

"Thus, when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred."  (*Foxborough*, *supra*, 26 Cal.App.4th at pp. 226-227.)

The court found the statute of limitations had run years before the Daon litigation concluded because Foxborough had sustained an "actual injury" when the three-year regulatory period for automatic annexation expired on May 8, 1983, and Foxborough lost the right it had retained Van Atta to secure.  "Foxborough then had to resort to the more onerous, expensive, and unpredictable task of obtaining annexation approval from the Apartments' owners, the very situation it hired Van Atta to avoid."  (*Foxborough*, *supra*, 26 Cal.App.4th at p. 227.)  Indeed, since "the statutory scheme does not depend on the plaintiff's recognizing actual injury" (*ibid.*), Foxborough had suffered the actual injury before its February 1985 discovery that the automatic annexation period had lapsed.  The court concluded that Code of Civil Procedure section 340.6, subdivision (a)(1) could not toll the one-year limitations period that commenced with the 1985 discovery. (*Foxborough*, at p. 227.)

Plaintiffs argue that *Foxborough* is factually distinguishable and reject defendant's claim that plaintiffs, like Foxborough, lost the right to sell their property.  Our analysis does not hinge on the loss of any right, remedy, or interest, although the loss of an automatic right to annex concededly was an important factor in *Foxborough*.  Rather, *Foxborough* also stands for the equally important principle that actual injury can precede notice of the malpractice and the outcome of the measures taken to remedy the lawyer's negligence.  The court pointed out that Foxborough was forced to resort to the "onerous, expensive, and unpredictable task of obtaining annexation approval" (*Foxborough*, *supra*, 26 Cal.App.4th at p. 227), and the undertaking of that task constituted actual injury.

6

Similarly, plaintiffs were forced to engage in lawsuits with BAPH3 and plaintiffs' lawyers, and as in *Foxborough*, undertaking those "onerous, expensive, and unpredicatable task[s]" constituted actual injury. Thus, in both cases the statute of limitations was not tolled once the alleged victims of their attorneys' malpractice suffered actual injury.

In *Jordache*, *supra*, 18 Cal.4th 739, the California Supreme Court addressed the same narrow question, as the court posed it: "When does a former client—having discovered the facts of its attorneys' malpractice—sustain actual injury so as to require commencement of an action against the attorneys within one year?" (*Id*. at p. 747.) The Court of Appeal in *Jordache* held that actual injury does not occur until related litigation concludes. (*Ibid*.) The Supreme Court rejected the appellate court's holding.

The court explained: "Actual injury refers only to the legally cognizable damage necessary to assert the cause of action. . . . The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor." (*Jordache*, *supra*, 18 Cal.4th at p. 752.) "An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred. [Citations.] Thus, we must distinguish between an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Id*. at p. 754.)

The facts in *Jordache* are instructive. In 1984 Jordache hired Brobeck, Phleger & Harrison (Brobeck) to defend it in a lawsuit and two weeks later asked its insurance broker for advice on insurance coverage for the action. The broker informed Jordache its policy provided no coverage for the pending lawsuit. Neither Jordache nor its broker gave the insurers notice of the lawsuit. Brobeck did not ask about Jordache's coverage or otherwise investigate whether any potential for coverage might trigger the insurers' duty

7

to defend.  Jordache did not ask Brobeck for advice about insurance coverage.  (*Jordache*, *supra*, 18 Cal.4th at pp. 744-745.)

In 1987 Jordache retained a new law firm to replace Brobeck.  This firm advised Jordache there was potential insurance coverage, and thus the new firm demanded that the insurers defend.  In December 1987 Jordache retained yet another firm and instructed the firm to prosecute claims against the insurers.  By this time, Jordache had discovered Brobeck's alleged negligence in not notifying or advising Jordache to give notice of the lawsuit to its insurers.  (*Jordache*, *supra*, 18 Cal.4th at p. 745.)

More than three years after the lawsuit was filed, the firm formally tendered a defense to the insurers and soon thereafter, in February 1988, filed an action against them seeking reimbursement of $30 million in attorney fees it had incurred in defending the initial action.  Jordache also claimed it had lost millions of dollars in profits because the funds it spent on attorney fees otherwise would have been successfully invested.  (*Jordache*, *supra*, 18 Cal.4th at p. 745.)

Jordache's legal malpractice action against Brobeck was effectively filed on August 15, 1990.  Brobeck moved for summary judgment, asserting that the one-year statute of limitations barred the action because Jordache had sustained actual injury by 1987 in the form of "(1) lost profits from business investment monies diverted to defense costs" and "(2) forgone insurance benefits for defense costs incurred before Jordache tendered defense of the [underlying] action." (*Jordache*, *supra*, 18 Cal.4th at p. 746.)  Jordache, like plaintiffs in the instant case, argued that it did not sustain actual injury until it settled with one of the insurers for less than the full amount of its claim.  (*Ibid*.)  The Court of Appeal agreed.  The Supreme Court did not.

The court wrote:  "[T]he determination of actual injury does not necessarily require some form of adjudication, judgment, or settlement. . . .  [¶] . . . [¶]  . . . A rule that invariably tolls the limitations period if collateral litigation might affect damages conflicts with [Code of Civil Procedure] section 340.6's terms and is inimical to its

8

purposes. . . . Delaying recognition of actual injury until related litigation concludes would give a client who has sustained actionable damages, and who is aware of the attorney's error, unilateral control over the limitations period. This result would undermine the Legislature's purpose in enacting a statute of limitations." (*Jordache*, *supra*, 18 Cal.4th at p. 755.)

The facts before us are remarkably similar to the facts in *Foxborough* and *Jordache*. In all three cases, the clients sustained actual injury when they became involved in collateral litigation as a result of their attorneys' alleged negligence. In *Foxborough*, the partnership "had to resort to the more onerous, expensive, and unpredictable task of obtaining annexation approval from the Apartments' owners, the very situation it hired Van Atta to avoid." (*Foxborough*, *supra*, 26 Cal.App.4th at p. 227.) The court characterized that task as an "actual injury." (*Ibid*.) Our facts are nearly indistinguishable. Plaintiffs, like Foxborough, hired legal counsel to provide transactional services, expecting the documents the lawyer drafted to embody the essential terms of the agreement. For Foxborough, it meant assuring that development of the second parcel could be automatically annexed to the larger parcel. For plaintiffs, it meant inclusion of a valuation methodology to determine the price of the property when the lessee exercised the option to purchase. Both Foxborough and plaintiffs had notice their lawyers failed to meet their expectations, and both Foxborough and plaintiffs took affirmative action to remedy the harm occasioned by their lawyers' alleged negligence. We conclude that once plaintiffs became embroiled in litigation with the optionee and sued their lawyers for malpractice, they, like Foxborough, sustained an actual injury.

Likewise, in *Jordache*, the company sustained an "actual injury" when it lost profits from business investment monies diverted to defense costs and did not receive insurance benefits for defense costs incurred before it tendered the defense to its insurer. (*Jordache*, *supra*, 18 Cal.4th at p. 746.) In our case, plaintiffs incurred the cost of litigating the valuation of the property after BAPH3 exercised its option and the cost of

9

prosecuting its first legal malpractice action. Thus plaintiffs, like Jordache, sustained an "actual injury" when they took affirmative collateral action to protect the interests their lawyers failed to protect. And the law is well settled that a client need not await the outcome of the collateral efforts to sustain an "actual injury"—the initiation of the effort is enough.

It is true, as plaintiffs assert, that the determination as to whether a plaintiff has sustained an actual injury is generally a question of fact. (*Adams v. Paul* (1995) 11 Cal.4th 583, 595-596 (conc. opn. of Kennard, J.).) When the material facts are undisputed, however, the trial court can resolve the matter as a question of law. (*Jordache*, *supra*, 18 Cal.4th at p. 751.) In this case we need look no further than the pleadings and the judicially noticed documents. As recounted above, plaintiffs asserted in their first malpractice action that as a result of defendant's negligence, she entered into protracted litigation with BAPH3. As a result, by 2007 plaintiffs were involved in two lawsuits—one with the optionee and one against the law firm. They, like their counterparts in *Foxborough* and *Jordache*, were forced to take affirmative action to undo the harm their lawyer allegedly failed to prevent. The mere existence of the pleadings is sufficient to demonstrate they had sustained an actual injury as defined by statute and interpreted by *Jordache* and *Foxborough*, and no factual dispute remains. Under these circumstances, the demurrer was properly sustained.

Plaintiffs argue the trial court abused its discretion by refusing to give them the opportunity to amend the complaint. A trial court does not abuse its discretion by sustaining a demurrer without leave to amend if it appears on the face of the complaint that under the applicable substantive law there is no reasonable possibility that an amendment could cure the complaint's defect. (*Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 486.) Plaintiffs bear the burden of demonstrating how they would amend the complaint to cure the defect. (*Association of Community Organizations for*

10

*Reform Now v. Department of Industrial Relations* (1995) 41 Cal.App.4th 298, 302.) This they have not done and cannot do.

We point out that plaintiffs were given a prior opportunity to amend to cure the defect after the court sustained defendant's first demurrer with leave to amend. But they faced then what they continue to face now, the insurmountable obstacle that they were engaged in two lawsuits in 2007 as a result of their lawyers' alleged negligence. As discussed at length above, the substantive law bars their lawsuit based on the simple and straightforward fact they incurred actual injury when they sought to vindicate the rights their lawyers allegedly neglected in those lawsuits. Their appeal is predicated on the proposition the trial court erred in accepting allegations in their 2007 complaint as a judicial admission, and they utterly ignore their burden to propose a viable complaint that can withstand a challenge based on the statute of limitations. In the absence of a proposed amended complaint that overcomes the statute of limitations, we conclude the trial court did not abuse its discretion by terminating a lawsuit Code of Civil Procedure section 340.6 clearly bars.

## DISPOSITION

The judgment is affirmed.

                                                RAYE          , P. J.

We concur:

       HULL         , J.

       ROBIE        , J.